## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREGORY J. TURLEY,      )
           )
       Plaintiff,     )
           )
     vs.         )     Civil Case No.   01-188-MJR
           )
ROGER COWAN, et al.,    )
           )
     Defendants.   )

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are a motion for judgment on the pleadings (filed by defendants Ohlau, J. Cowan and MacAdory) and a motion for summary judgment (filed by all defendants)(Doc. Nos. 80, 83). In this § 1983 action, plaintiff claims that the defendants altered the conditions of his confinement in retaliation for conduct protected by the First Amendment, namely, filing grievances regarding a correctional employee's conduct.

### I.    Motion for Judgment on the Pleadings

Defendants Ohlau, J. Cowan and MacAdory seek judgment in their favor, arguing that the retaliation claim asserted against them in the Amended Complaint is barred by the applicable 2-year limitations period (Doc. No. 80). Plaintiff believes he asserted claims against these defendants in a timely manner. He points to the fact that he listed John Doe defendants in his original pleading, suggests that he has described a continuing deprivation, and argues that tardy judicial rulings tolled the running of the limitation period (Doc. No. 88).

This Court may grant a motion for judgment on the pleadings "only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987)(*quoting Flora v. Home Fed. Savings & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982)).

The statute of limitations is an affirmative defense which need not be addressed by plaintiff in his pleading. Fed. R. Civ. P. 8(c); *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). However, the defense may be resolved definitively on the basis of the allegations when the plaintiff pleads himself out of court by alleging the elements of the defense. *Id.*

The parties correctly state that the statute of limitations for § 1983 claims is two years. *See Ashafa v. City of Chicago*, 146 F.3d 459, 462 (7th Cir.1998). While the limitations period is borrowed from Illinois, federal law determines when the claims against these defendants accrued. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir.1992). Those claims accrued when plaintiff knew or had reason to know of the injury that forms the basis of this action. *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir.1994).

The relevant facts are not in dispute. Plaintiff filed his claims in March, 2001, seeking relief for events occurring in May and June, 2000. His claims were screened in February, 2002. At that time, plaintiff was allowed to proceed against some named and unnamed parties. The original named defendants waived service in March, 2002.

In September, 2002, plaintiff served written discovery seeking access to documents that would help him identify the Doe defendants. Responses served in November, 2002, disclosed the identity of the unnamed parties (Doc. No. 40).

On December 5, 2002, plaintiff filed a motion for leave to amend in an effort to identify some of the Doe defendants, including Ohlau, J. Cowan and MacAdory (Doc. No. 26). That motion was ordered stricken on August 28, 2003 (Doc. No. 38). On September 18, 2003, plaintiff again sought leave to substitute named defendants for the Doe defendants (Doc. No. 40). That motion was denied on September 27, 2004 (Doc. No. 53). On October 12, 2004, plaintiff filed another request for leave to amend (Doc. No. 55). That motion was allowed and these new defendants – Ohlau, J. Cowan, and MacAdory – were added as parties on January 21, 2005.

Defendants Ohlau and J. Cowan waived service of process in February, 2005; defendant MacAdory waived service of process in May, 2005.

The allegations in the Amended Complaint establish that, following a series of events in May, 2000, plaintiff was transferred to Shapeville Correctional Center on June 7, 2000. Hence, the Amended Complaint shows that plaintiff's retaliation claim accrued on June 7, 2000. Because the amendment adding defendants Ohlau, J. Cowan and MacAdory does not relate back to the date of the original pleading,[1] the limitations period expired on June 7, 2002, unless the period was tolled.

Plaintiff may be suggesting that defendants Ohlau, J. Cowan and MacAdory waived their statute of limitations defense by failing to object when he sought leave to amend. If so, the argument lacks merit. Because these defendants were not parties when plaintiff filed his motions, they could not raise objections.

---

[1] Amendment does not relates back to the original complaint where there is a simple lack of knowledge of the identity of the proper party. Relation back occurs only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake. Fed. R. Civ. P. 15(c)(3); *Basin v. City of Des Plaines*, 138 F.3d 701, 702-03 (7th Cir.1998).

Plaintiff's tolling argument appears to invoke the doctrine of equitable tolling, which allows him to file a claim after the statute of limitations has expired only if he was unable to do so earlier despite the exercise of reasonable diligence. *Wilson v. Battles*, 302 F.3d 745, 748 (7th Cir. 2002).

Plaintiff points to various delays in these proceedings. While judicial delays are unfortunate, they do not show diligence on plaintiff's part to discover the identity of the Doe defendants and name them in a pleading before the limitations period expired. Rather, plaintiff's first attempt to learn the identity of the Doe defendants occurred after the limitations period expired – when he served a written discovery request in September, 2002. Because plaintiff does not suggest that he made an effort to learn the identity of Doe defendants and name them in a pleading before the limitations period expired, the doctrine of equitable tolling does not extend the limitations period.

The motion for judgment on the pleadings should be allowed and the claims against defendants Ohlau, J. Cowan and MacAdory should be dismissed with prejudice.

## II.    Motion for Summary Judgment

The defendants seek judgment in their favor, arguing that the evidence does not satisfy the elements of plaintiff's retaliation claim. They also assert their qualified immunity defense.

Plaintiff asks the Court to disregard portions of his deposition testimony and argues that the remaining evidence supports his claim or that material facts remain in dispute.[2] Plaintiff also argues that the defendants are not entitled to qualified immunity.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[2] Plaintiff moved to strike the motion for summary judgment (Doc. No. 89). While that motion was denied, plaintiff has appealed a portion of that order pursuant to 28 U.S.C. § 636(b) (Doc. No. 110).

any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Chelates Corp. v. Citrate*, 477 U.S. 317, 322-23 (1986).  To determine whether there is a genuine issue of material fact, courts construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

With respect to plaintiff's deposition testimony, the Court has not considered statements regarding plaintiff's "personal issues."  Absent facts linking defendants' conduct to their knowledge of plaintiff's personal issues, the evidence is not relevant.  Both parties have submitted information that is not relevant to the issues before the Court.  Irrelevant evidence has not been considered.  The evidence that has been considered is discussed below.

In May, 2000, plaintiff was an inmate at Mannered Correctional Center.  Mannered Correctional Center is a maximum security prison with a volatile environment.  Plaintiff was classified as a medium security inmate presenting a moderate escape risk and had maintained those designations for several years.  He was assigned to a low-aggression housing unit, had a job assignment, and had access to privileges due to his "A" grade status.

On May 2, 2000, he wrote a grievance regarding the conduct of defendant Marry, a correctional employee; specifically suggesting that Marry's manner of dress was inappropriate and raised legitimate security concerns.

On May 11, 2000, Marry received a copy of plaintiff's grievance.  She wrote an inmate disciplinary report accusing plaintiff of insolence and intimidation or threats.  Marry's report was based on statements made in plaintiff's grievance.  As a result of Marry's inmate disciplinary report, plaintiff was confined in his cell on "deadlock" status for a period of time.

On May 25, 2000, defendant Gales, acting as the chairperson of an adjustment committee, reviewed Marry's report and conducted a hearing. He found plaintiff guilty of insolence based on the grievance plaintiff filed. Along with other committee members, Gales gave plaintiff a verbal reprimand. Plaintiff appealed the committee's decision. On appeal, the Administrative Review Board found that Marry's accusations were not substantiated. The disciplinary charges were expunged.

Meanwhile, on May 23, 2000, defendant Whittenburg submitted plaintiff for a transfer to Shapeville Correctional Center. Other officials signed off on Whittenburg's recommendation, which listed "a conflict of interest with a female staff member" as the reason for the transfer.

In connection with the transfer, plaintiff's internal security classification was assessed by a group of individuals, including defendant Whittenburg. These individuals recommended that plaintiff's escape risk level be elevated from "medium" to "high" and that his security level be elevated from "medium" to "maximum."

With respect to the "high" escape risk rating, each individual referred to statements regarding plaintiff's history, which reflected escapes between 1978 and 1981. These statements may have exaggerated plaintiff's actual escape history. Two others relied on a statement that plaintiff attempted to elude law enforcement officers in 1986. The individuals relied on statements that did not comport with applicable guidelines, which focus on an inmate's recent escape history.[3] The rationale for the "maximum" security level rating was listed as a scored security designation.

---

[3] As part of the classification system, the Illinois Department of Corrections assigns escape risk designations. Upon transfer, escape risk designations are reviewed to determine if the designation is still appropriate. The guidelines identify conditions that must be present to assign certain escape risk levels. Where history is the condition considered, a "high" rating is appropriate when the escape activity occurred within the past five years (Doc. No. 102, Ex. K).

In May and June, 2000, defendant R. Cowan was the warden at Mannered Correctional Center.  He considered a transfer as one tool that could be used to diffuse conflicts or prevent conflicts from developing in a prison facility.  While defendant R. Cowan does not recall the particular circumstances of plaintiff's transfer to Shapeville Correctional Center in June, 2000, he concedes that he reviewed staff recommendations, gave plaintiff high escape risk and maximum security designations, and approved plaintiff's transfer to Shapeville.  Defendant R. Cowan accepted the staff recommendation to elevate plaintiff's escape risk classification "in large part" because of plaintiff's escape history.[4]  He denies that he based his evaluation on plaintiff's use of the inmate grievance process.

After plaintiff's escape risk level was elevated, he received a new color-coded identification card.  Plaintiff was transferred to Shapeville Correctional Center on June 7, 2000.  Because both Shapeville and Mannered Correctional Centers are Level 1 facilities, this was a lateral transfer.  However, as a direct result of the transfer and new designations, plaintiff lost some privileges, including his job assignment.

The defense of qualified immunity is considered first.  In order to resolve this argument, the Court takes the facts in the light most favorable to plaintiff and decides whether the conduct violated a Constitutional right.  If so, the Court considers whether the right was clearly established in the light of the specific context of the case.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The defendants seek qualified immunity on the basis that their conduct was motivated by a

---

[4]  Defendant R. Cowan describes a hypothetical situation in which a grievance might be reveal a conflict between an inmate and staff member.  Because these comments are speculative, they are not considered.  Defendant R. Cowan also describes his recollection of defendant Marry's manner of dress.  Because these comments are not relevant to any claim or defense, they are not considered.

legitimate desire to avoid or diffuse a conflict between plaintiff and a female staff member and assess plaintiff's escape risk in light of his history.  Plaintiff argues that the evidence shows that the defendants were motivated by a desire to retaliate.  This is the second time the defense has been raised as grounds for summary judgment.  An earlier motion by defendants R. Cowan, Marry, Whittenburg, and Gales resulted in a finding in favor of the plaintiff on this defense (Doc. No. 43).

Viewed in plaintiff's favor, the current evidence regarding plaintiff's confinement at Mannered Correctional Center supports an inference that retaliation was a substantial motivating factor behind the acts performed by defendants  R. Cowan, Marry, Whittenburg, and Gales.  The timing of their actions and decisions, the link to plaintiff's grievance targeting defendant Marry, and questionable justifications for classification enhancements support such an inference.  The conduct attributed to these defendants violated plaintiff's First and Fourteenth Amendment right to seek an administrative remedy regarding the conditions of his confinement.  That right was clearly established in May and June, 2000.  *See Babcock v. White*, 102 F.3f 267 (1996).  Accordingly, defendants  R. Cowan, Marry, Whittenburg, and Gales are not entitled to qualified immunity.

The evidence does not attribute any retaliatory motivated conduct to defendant Briley.  Absent evidence demonstrating that Briley reacted to plaintiff's grievance by altering the conditions of plaintiff's confinement, he is entitled to qualified immunity.

The defendants also seek judgment in their favor on the merits of plaintiff's retaliation claim.  For the reasons stated above, the defendants are not entitled to judgment in their favor.

The defendants also argue that plaintiff has not stated a claim for an award of compensatory damages.  Because this argument is not accompanied by a discussion of the allegations or relevant facts, it is rejected as grounds for summary judgment.  Moreover, plaintiff has described alterations

in the conditions of his confinement that might support an award of compensatory damages.

## III.    Conclusion

IT IS RECOMMENDED that the motion for judgment on the pleadings (Doc. No. 80) be GRANTED.  The § 1983 claims against defendants J. Cowan, MacAdory, and Ohlau should be dismissed with prejudice.

IT IS FURTHER RECOMMENDED that the motion for summary judgment (Doc. No. 83) be GRANTED in part and DENIED in part.  At the close of this case, summary judgment should be entered in favor of defendant Briley.

SUBMITTED:   March 2, 2006   .

s/Philip M. Frazier
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**